# CITIZENS NATIONAL BANK OF ROSWELL, NEW MEXICO, *v.* DAVISSON.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 551.   Argued December 4, 1912.—Decided May 26, 1913.

Under the act of April 7, 1874, c. 80, § 2, the review by this court of judgments of the Supreme Court of a Territory is confined to determining whether the facts found by the court below sustain the judgment.

The facts found are certified to this court by the territorial Supreme Court either by adopting the findings of the trial court or by making separate findings of its own.

One holding in escrow an agreement and money to be paid to one of two parties according to the terms of the agreement, acts at his peril in dealing with either party without the consent of the other; and if the party to whom he pays the amount deposited is not entitled thereto he is liable to the other party.

An endorsement on the outside of the envelope containing the escrow, made by an officer of the bank acting as escrow-holder, does not protect the bank if it is not in accordance with the escrow agreement itself.

One cannot plead ignorance of a fact of which he has notice as an excuse for violating rights of parties whom he is bound to protect.

The fact that no officer of the bank has read an escrow agreement does not relieve the bank of responsibility for its action based on a separate memorandum made by one of its officers and which does not express the terms of the agreement.

An extension verbally agreed to for completing the record title to the property where the contract to convey expressly provides for such an extension without specifying its length in case defects are developed, is not a parol variation or modification of a written contract.

In this case a bank acting as escrow-holder with notice of the contract, having by paying over to one party failed in its duty to act impartially, it is liable to the other party who was entitled to the money under the contract.

16 N. Mex. 689, affirmed.

THE facts are stated in the opinion.

*Mr. William C. Reid,* with whom *Mr. James M. Hervey* was on the brief, for appellants:

The holder of papers deposited with a bank in escrow can redeliver the paper deposited by one of the parties, to him, after the other party to the escrow agreement is in default in the performance of everything he was bound to perform,—without the consent of such other party in default, or order of court. 16 Cyc. 576, 584; 11 Am. & Eng. Enc. of Law, 352; *Humphrey* v. *Richmond R. R. Co.,* 13 S. E. Rep. 985; *Burlington R. R. Co.* v. *Palmer,* 42 Iowa, 222; *Bodwell* v. *Webster,* 13 Pick. 411; *Hayton* v. *Meeks* (Ark.), 14 S. W. Rep. 864; *Equity Gaslight Co.* v.

*McKeige* (N. Y.), 34 N. E. Rep. 898; *Riggs* v. *Trees* (Ind.), 5 L. R. A. 696; *Hoyt* v. *McLagan*, 87 Iowa, 146.

The court below erred in holding that the appellant bank's liability in this action is not limited by the escrow agreement and also erred in holding that the liability of the bank is to be determined by the contract of Owens and Berryman, to which contract the bank was not a party, and the terms of which were not brought to its knowledge.

The court below erred in holding that the contract between Berryman and Owens did not become unenforceable under the statute of frauds.

The bank was a stranger to any alleged parol contract, but if, as assumed by the court, it is bound by it, it could only be so bound as a privy of Berryman and the statute of frauds is available by parties to the contract, their representatives and privies. 29 Am. and Eng. Enc. of Law, 807.

The contract in question being for the sale of land, is within the statute of frauds, and the agreement that the estate should have further time in which to secure an order of the court, was a subsequent and non-permissible variation of the contract in writing by parol. *Emerson* v. *Slater*, 22 How. 42; *Swain* v. *Seeman*, 9 Wall. 254, 274.

The effect of changing the time for performance of a written contract that was in escrow with the bank would be to make the entire contract a parol contract. *Kirchner* v. *Laughlin*, 5 N. Mex. 394; *Hasbrouck* v. *Tappen*, 15 Johnson, 200; *Hersley* v. *Savanstrom*, 41 N. W. Rep. 1027; *Athe* v. *Bartholomew*, 33 N. W. Rep. 110; *Abel* v. *Munson*, 18 Michigan, 305; *Cook* v. *Bell*, 18 Michigan, 389; 29 Am. and Eng. Enc. of Law, 824.

Oral promises to convey land gain no validity at law by reason of the taking possession of land by the proposed purchaser. 20 Cyc. 289.

Unless the contract expressly provides that a deed shall be made by a third person, it must be made by the vendor

himself, even though the words of the contract are that the vendor shall execute the deed or cause it to be executed. 29 Am. & Eng. Enc. of Law, 701; Warvelle on Vendors, § 419.

*Mr. W. A. Dunn,* with whom *Mr. G. A. Richardson* and *Mr. Ed. S. Gibbany* were on the brief, for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

This action was brought in the first instance in the District Court of Chaves County, in the then Territory of New Mexico, by Davisson, as plaintiff, against the Citizens National Bank of Roswell and Mrs. Owens, as defendants. He set up a claim to be paid $5,000 as commissions on a sale of real and personal property made by him as broker in her behalf to one C. C. Berryman, claiming a right to recover against the Bank on the ground that Mrs. Owens had given to him a written order directed to the Bank for payment of the $5,000 out of money of hers that was in the hands of the Bank. Mrs. Owens answered for herself and others as Executors of Solon B. Owens, deceased, denying liability to Davisson, on the ground that the sale in question had not been consummated; and, by a cross-complaint against the Bank, she set up that a contract of sale was made by her in behalf of the Executors of Solon B. Owens, deceased, with Berryman, and, upon its execution, the sum of $9,173.32 was by agreement of the parties deposited in the Bank together with a copy of the agreement; that after examination of the title by Berryman he required the Executors to procure an order of court authorizing them to sell and convey the land, whereupon it was agreed that the time for the conveyance of the title should be extended until such date as the Executors should be able to obtain the order so required, and that in the meantime Berryman should enter into

possession of the land, and he did go into possession thereof; that afterwards Berryman abandoned the possession of the land and removed to his former home in Arkansas, and because of his not being within the jurisdiction of the Territory the Executors could not obtain service of process upon him nor sue him for specific performance of the contract of sale; that under the provisions of the contract the Executors had elected to declare said $9,173.32 forfeited by the failure and refusal of Berryman to carry out the contract; wherefore judgment was prayed against the Bank as trustee for the Executors with respect to the money in question. The Bank answered both the complaint and the cross-complaint, not denying the making of the contract between Mrs. Owens and Berryman, but denying that it was a party thereto or had any knowledge thereof or concern therewith, and asserting that the $9,173.32 was deposited with the Bank by Berryman in escrow, and subject only to the terms of a written memorandum or agreement signed by the Bank's cashier; and that because these terms had not been complied with by Mrs. Owens the responsibility of the Bank to her had been terminated, and therefore the Bank had paid the whole of the sum of $9,173.32 to Berryman, in compliance with his demand.

Upon the issues thus joined, the parties proceeded to trial before the judge of the District Court, without a jury, who rendered judgment in favor of the Bank, dismissing both the complaint and the cross-complaint.

Davisson and Mrs. Owens appealed to the Supreme Court of the Territory, which court reversed the judgment and remanded the record to the District Court with instructions to reinstate the action and proceed in accordance with the views expressed in the opinion. 15 N. Mex. 680. The grounds of decision, briefly, were that by the escrow agreement the Bank became agent for both parties, that the memorandum did not authorize it to pay over

the money to either party, and that in taking sides and making payment to Berryman it acted at its peril, and should be held responsible to Davisson and Mrs. Owens if upon a retrial they should sustain their right to the money as against Berryman.

The case was accordingly brought on again to trial before the District Court, without a jury, with the result that judgment was rendered against the Bank, in favor of Davisson for $5,000 and interest (the amount of his commissions), and in favor of Mrs. Owens and the other Executors of the Estate of Solon B. Owens, deceased, for the residue of the $9,173.32. Upon appeal by the Bank to the Supreme Court of the Territory this judgment was affirmed, 16 N. Mex. 689, and the Bank appealed to this court.

Under the act of April 7, 1874, c. 80, § 2, 18 Stat. 27, 28, our review is confined to determining the question whether the facts found by the court below sustain the judgment. And these facts are to be certified to us by the territorial Supreme Court, either by adopting the findings of the trial court, or by making separate findings of its own. *Stringfellow* v. *Cain*, 99 U. S. 610, 613, 614; *O'Reilly* v. *Campbell*, 116 U. S. 418, 421; *Haws* v. *Victoria Copper Mining Co.*, 160 U. S. 303, 312; *Gildersleeve* v. *New Mexico Mining Co.*, 161 U. S. 573, 577; *Apache County* v. *Barth*, 177 U. S. 538, 542, 547; *Crowe* v. *Trickey*, 204 U. S. 228, 235; *Eagle Mining Co.* v. *Hamilton*, 218 U. S. 513; *Zeckendorf* v. *Steinfeld*, 225 U. S. 445, 448; *Rosaly* v. *Graham*, 227 U. S. 584, 590.

The Supreme Court of the Territory, in affirming the judgment of the District Court resulting from the second trial, adopted the findings of that court, and supplemented them with certain findings of its own. From these findings, and from the admissions of the pleadings, the essential facts of the case may be summarized as follows:

On August 21, 1908, Mrs. Owens, residing at Roswell,

Chaves County, New Mexico, acting for herself and in behalf of others who were her co-executors of the estate of her deceased husband, Solon B. Owens, made an agreement in writing with C. C. Berryman of Arkadelphia, Arkansas, for the sale to him of certain lands, belonging to the Estate, situate in Chaves County, containing 360 acres, with the live stock and other personal property thereon. Davisson negotiated the sale as broker, and was entitled to a commission of $5,000 for his services if the sale should be finally consummated. The price agreed to be paid by the purchaser was $80,000, payable $10,000 in cash upon the making of the agreement (receipt whereof was acknowledged), $12,000 by assuming payment of a note for that amount held by an insurance company in Ohio and not yet due, and the balance to be secured by five notes of $11,600 each, falling due September 10, 1909, and in the four successive years thereafter. The property was to be clear of all encumbrance excepting the $12,000 mortgage. By the terms of the agreement the party of the first part, within ten days from its date (that is, on or before August 31), was to furnish the party of the second part, at Roswell, a complete abstract of title showing a good merchantable title in the party of the first part; the purchaser was to have until September 10th to examine the abstract, and if it showed a good title the transaction was to be closed at Roswell on or before September 10th, by the delivery of a warranty deed to the purchaser, he paying the consideration according to the terms of the agreement. There were the following additional clauses, which should be quoted in full:

"6th. If, upon examination of the said abstract of title, it is found that the title is not a good merchantable title, then any objections made to said title, shall be pointed out by the party of the second part, and then the party of the first part shall have ten days in which to cure said objections. Should it prove, upon examina-

tion of said abstract, that the said title is not good, and same cannot be made good within such reasonable time, then it shall be the duty of the party of the first part to perfect said title at their expense, promptly in accordance with the requirements of the party of the second part, within the time stated, and if the party of the first part fails, neglects, or refuses to perfect said title in accordance with the requirements of the party of the second part, then the party of the second part shall have the right to perfect said title at the expense of the party of the first part who shall repay at Roswell, New Mexico, such sum of money as is expended by the party of the second part in perfecting said title, and if upon examination of said title it shall be shown that the title to the said property is not good and cannot be made good, then in such event this sale shall be annulled and the said $10,000.00 paid as purchase money hereinbefore provided for shall be returned by the party of the first part to the party of the second part.

"7th. Now, if the party of the first part complies with this contract and furnishes the abstract as provided for and the title is shown to be good or can be made good, and tenders to the party of the second part at Roswell, New Mexico, a warranty deed as provided for, and the party of the second part shall fail, neglect or refuse to comply with this contract, shall fail to accept deed and execute the said notes as provided for, then in such event, the party of the second part shall forfeit the said $10,000.00 paid, at the option of the party of the first part, or at his option *and* the party of the first part shall have a cause of action against the party of the second part, enforceable in the courts of Chaves County, New Mexico, for a specific performance of contract.

"8th. Should the party of the second part, upon examination of said abstract, find the title to the said property good and within the time stated, stand willing and

able to consummate this deal, to pay the balance of purchase money and execute the notes as above provided for and the party of the first part shall fail, neglect or refuse to execute said warranty deed in accordance with this contract, then in such event, the party of the second part shall have a cause of action against the party of the first part, enforceable in the courts of Chaves County, New Mexico, for a specific performance of contract.

"9th. Possession of said property shall be given on or before the 10th day of September, 1908."

Upon the making of this written contract, it was folded and placed in an envelope, together with a check made by Berryman and payable to Mrs. Owens for the sum of $9,173.32, and the envelope and its contents were taken by Mrs. Owens, Davisson and Berryman to the Citizens National Bank of Roswell, to be held by the Bank "in escrow" until September 10th, pending the furnishing an abstract of title, a favorable report thereon, and final settlement. With the consent and approval of all the parties a memorandum was indorsed upon the envelope in the following terms: "Check enclosed to be held in escrow until September 10, when final settlement is to be made. Deed and abstract to be placed in escrow with this. Abstract to be forwarded to Citizens Bank & Trust Company, Arkadelphia, Arkansas, for examination. No money to be paid over until abstract is approved by purchaser's attorneys. (Signed) J. J. JAFFA, Cashier."

Up to September 10th the Owens Estate had not made good title to Berryman, and on or about that date it was orally agreed between them that the Estate should have thirty or forty days time in which to secure an order of court, and in consideration of this, Berryman, who was stopping on expense at the hotel in Roswell, was put in possession of the property on September 10th, and he remained in possession thereof, exercising acts of ownership thereon until September 22d, on which date (the

time agreed upon for securing an order of sale through the courts, not having yet expired) Berryman, without just cause, repudiated and abandoned the contract and departed from the Territory. Meanwhile, and in consideration of the verbal arrangement of September 10th, the Estate took immediate steps at considerable expense to secure the required order of court, and did in fact secure it on October 5th. But at some time after September 10th (the precise date does not appear) Berryman demanded of the Bank the return of his check. The Bank had been notified by Davisson of the verbal agreement of September 10th extending the time in which to perfect the title to the land, but had no other knowledge of this, and the granting of this extension was denied by Berryman. The Bank complied with his demand and returned to him the check of $9,173.32, or its equivalent. It appears that no officer of the Bank ever read the contract of sale or knew of its terms; and the Bank so far as appears, had no knowledge of what had taken place between Mrs. Owens and Berryman after the contract and check were left with it except for Davisson's notification respecting the verbal arrangement made on September 10th. After the Bank had turned over to Berryman the check or its equivalent, Mrs. Owens and Davisson demanded from the Bank their respective shares of the money, and the demands not being complied with, the present action resulted. Berryman, being absent from the Territory, was not joined as a party.

The fundamental proposition that underlies the whole argument for the appellants is that the Bank had no concern with anything beyond the terms of the escrow as manifested in the written memorandum endorsed upon the envelope. But this memorandum is evidently not a complete expression of the agreement between the parties, and indeed is unintelligible except by reference to the contract of sale. It does not mention the names of the

parties or either of them; does not specify what "settlement" is to be made, nor where; does not state by whom "deed and abstract" are to be placed in escrow, nor when, nor for what purpose. Above all, and more important for the present purpose, it does not either state or intimate what is to be done with the check or money if settlement is not made on September 10th, or if abstract is not "approved by purchaser's attorney."

It is clear that the instrument of August 21st came into existence as a binding contract between the parties thereto at, if not before, the time it was lodged with the Bank. We say this, notwithstanding the ambiguity of the findings in this regard; for the Supreme Court, after having stated that the parties "entered into" the contract, afterwards stated that "the contract itself was never delivered to either of the parties, other than being placed in escrow." Since the making of the contract was clearly averred in both the complaint and the cross-complaint, and was not denied by the Bank in its answer, it followed, under the local practice (Comp. Laws, N. M. 1897, § 2685, sub-sec. 67), that for the purposes of this action the averment must be taken as true. And, on general principles, the findings are to be interpreted in the light of the issue. *Reynolds* v. *Stockton,* 140 U. S. 254, 268, and cases cited.

Therefore the deposit of the agreement and check with the Bank was not technically an "escrow," in the sense that the agreement was not to take effect until performance of the condition. In the light of all the facts of the transaction, as shown by the findings, it is clear that the parties treated the agreement as in force between them. And the terms of the memorandum endorsed on the envelope are consistent with this.

The contract of August 21, 1908, being in force as a contract between the parties, it is plain that the memorandum endorsed upon the envelope was not intended to modify its provisions.

Upon the whole case, we are clear that the effect of the deposit of the contract and check with the Bank was to constitute it a custodian or stakeholder for the benefit of both parties, holding the money without right or interest in it, bound above all things not to take sides between the parties, and answerable ultimately to the one or the other, according to their respective rights as between themselves.

The endorsement upon the envelope was a mere memorandum, not containing any clear expression respecting the agreement of the parties, and evidently unintelligible unless read in connection with the contract of sale. Quite as manifestly the deposit had no reason for existence except in aid of that contract and as a protection to both contracting parties.

The fact that no officer of the Bank read this contract or knew of its terms is of no avail to the Bank. By the very circumstances of the deposit it was put upon notice that it was assuming a duty that could not be fully understood or fairly performed without a knowledge of the contents of the contract; it had possession of that instrument, with full opportunity to examine it; except for its own negligence it would have known the terms thereof. To permit it now to set up its own ignorance as an excuse or justification of its conduct in violating the rights of one of the parties to the contract would be to permit it to take advantage of its own wrong.

Berryman's check to the order of Mrs. Owens for $9,173.32, having been deposited as a substitute for the cash payment of $10,000, called for by the agreement of August 21, was of course subject to be forfeited under the terms of the agreement as above recited, in the event that Berryman failed to comply with his contract.

The facts found show that while the vendors were doing what he had required them to do, and, so far as appears, all that they were called upon to do, to make a

good title under the contract, he repudiated and aban-
doned it, without just cause, gave up possession of the
property and departed from the Territory.  On familiar
principles, this absolved the Owens' Estate from any
further performance of conditions precedent on their
part.  *Roehm* v. *Horst,* 178 U. S. 1, 8, 16, and cases cited;
*O'Neill* v. *Supreme Council,* 70 N. J. Law, 410; *Holt* v.
*United Security Life Ins. Co.,* 74 N. J. Law, 795, 801; 76
N. J. Law, 585, 590.

It is contended that the verbal arrangement made be-
tween the Owens' executors and Berryman on or about
September 10th, for an allowance of time within which
to procure the court order, was an attempt to vary the
written contract, and that this could not be done with-
out writing, because of the statute of frauds.  *Emerson* v.
*Slater,* 22 How. 28, 42; *Swain* v. *Seamens,* 9 Wall. 254, 272.

Without stopping to inquire as to the bearing of the
statute, a sufficient answer to this point is that the verbal
arrangement of September 10th was not variant from,
and therefore did not have the effect of modifying, the
written agreement of August 21st.  That agreement
did not call for the passing of title on or before Septem-
ber 10th, unless the abstract showed a good title; if it
did not, and objections were pointed out by the purchaser,
the vendors were to have at least ten days in which to
cure his objections, and if the title could not be made
good "within such reasonable time" (evidently referring
to the ten days) "then it shall be the duty of the party
of the first part to perfect said title at their expense,
promptly in accordance with the requirements of the
party of the second part, within the time stated, and if
the party of the first part fails, etc., to perfect said title
in accordance with the requirements of the party of the
second part, then the party of the second part shall have
the right to perfect said title at the expense of the party
of the first part, who shall repay," etc,

The contract did not fix any specified time, upon the expiration of which Berryman was entitled to treat it as being at an end. It foresaw possible delays respecting the perfection of the title, and contemplated a verbal agreement allowing to the vendors a reasonable time for this purpose. The verbal arrangement, allowing to the Executors "thirty or forty days time in which to procure an order of court," was in effect a "stating of time" by Berryman, within which his "requirements" should be complied with, as provided by the sixth paragraph of the written agreement.

That instrument stated what should be deemed sufficient ground for an annulment of the sale, and a return to Berryman of the $10,000, paid on account of the purchase money, and did not set any time limit, the language being: "And if upon examination of said title it shall be shown that the title to the said property is not good and cannot be made good, then in such event this sale shall be annulled and the said $10,000 paid as purchase money hereinbefore provided for shall be returned by the party of the first part to the party of the second part." Berryman, having himself repudiated the contract before any default was made by the vendors, thereby dispensed with a tender or further performance on their part, and forfeited to them the money deposited.

The Bank, with fair notice of this, and in violation of its duty of acting impartially between the parties, paid the money over to Berryman, and thereby became liable to respond to the Executors, in whose behalf the contract was made by Mrs. Owens, and who were represented by her in this action.

It follows that the facts fairly sustain the judgment of the court below. Upon this appeal no controversy is raised as between Davisson and the Executors.

*Judgment affirmed.*