[Civ. No. 15385.   First Dist., Div. One.   Feb. 16, 1953.]

EMMETT E. HOLLOWAY et al., Respondents, v. RICHARD H. THIELE, Appellant.

Delany, Fishgold & Minudri, Mathew M. Fishgold and Manuel L. Furtado for Appellant.

Bernard B. Glickfeld for Respondents.

BRAY, J.—Defendant, a real estate broker, returned to the buyer a $3,500 deposit on account of the purchase price of plaintiffs' property. In an action for moneys had and received, plaintiffs recovered judgment for that amount. Defendant appeals.

## QUESTION PRESENTED

Did defendant receive the deposit as plaintiffs' agent?

## FACTS

Defendant as a real estate broker was a member of Multiple Listing Service, with whom plaintiffs had listed their property. The listing agreement makes the listing and the selling broker coagents of the seller and authorizes the latter to accept and hold a deposit from the buyer in accordance with the Uniform Agreement of Sale and Deposit Receipt* adopted by the San Francisco Real Estate Association. Thiele found a buyer, a Mrs. Rosa Orton. On April 23, 1951, she signed the deposit receipt. It recited that she had deposited $200 on account of the purchase price of $14,250 for plaintiffs' property, that the deposit was to be increased to $3,500 upon approval by seller. "Property to be refinanced with conventional Insurance Loan at 4½% interest. Balance in Cash to include a 2nd MTGE which is payable to the *purchaser* in 3

---

*Hereafter referred to as "deposit receipt."

semi Annual payments . . ." (Emphasis added.) Among other provisions of the receipt were, 30 days to be allowed purchaser to examine title, balance of purchase price to be paid before expiration of that time to defendant "for account of the seller," seller to deliver to defendant a proper deed. If purchaser fails to comply with any of the conditions of the receipt within the time limited, "said deposit shall be retained by said seller, as liquidated and agreed damages . . ." or the seller may elect to apply the deposit on account of the purchase price and sue the buyer for specific performance. The same day defendant brought the receipt to plaintiffs' home, stating that he had the $200 deposit, but saying nothing to the effect that it was paid conditionally. Plaintiffs then signed the approval of the sale attached to the receipt, thereby agreeing to pay the brokers $712.50 for services rendered and agreeing that "In case of a forfeited deposit, said agent shall receive or retain one-half thereof . . ." but no amount in excess of the commission.

Defendant ordered a title search and opened up an escrow with an escrow company. About April 30th the buyer deposited with defendant the additional $3,300. May 8th plaintiffs' deed to Mrs. Orton was deposited with the title company. Plaintiffs' title was good, and the same day the escrow company made demand upon defendant for the $3,500 deposit. Mrs. Orton's husband was overseas in military service. An insurance company was willing to make a loan on the property for the balance of the purchase price, but the financing could not be completed unless the husband signed the loan papers. Defendant wrote plaintiffs to that effect and stated that the insurance company had recommended that the agreement of purchase be extended until the husband's return, which would be about the middle of June. Plaintiffs agreed to an extension until June 18th. The husband's ship landed in Seattle but he was required to make another trip immediately, so he was unavailable to sign the papers. He did not return to San Francisco until August. Early in May defendant stated to plaintiffs that because of Mrs. Orton being unable to obtain a power of attorney from her husband to sign the loan papers and because she was pregnant it would be a gracious thing for plaintiffs to return her deposit and defendant would sell the property to others. Plaintiffs refused either to consent to a return of the deposit or to a sale to others. Defendant testified he could have so sold the property. Defendant made attempts to get a loan for Mrs. Orton from

several sources but could not do so because of the unavailability of her husband. Early in June and before the expiration of the extended time defendant returned the $3,500 to Mrs. Orton.

## AGENCY

There is no question that under the listing agreement and the deposit receipt defendant was plaintiffs' agent to receive a deposit on account of the sale to Mrs. Orton. Defendant contends, however, that the deposit made by the latter and the sale to her of the property was conditional upon her being able to obtain an insurance loan and thereby to finance the purchase, and that the deposit receipt so shows. Hence, says defendant, he received the money as Mrs. Orton's agent to be held until she financed her purchase. Whatever defendant's relationship to her might have been, a proper construction of the deposit receipt shows that the clause as to refinancing was not a condition to plaintiffs' approving the sale to her. Immediately after the paragraph concerning refinancing appear the words ''Conditions of Sale,'' followed by numerous specifications, none of which refers to the refinancing. Taking the receipt as a whole, it appears that the buyer paid a deposit of $200, was to increase the deposit to $3,500 immediately upon approval of the sale by the sellers, and that the balance of the purchase price was to be cash paid to sellers but secured not by any encumbrance in favor of the seller but by two encumbrances to third parties. The deposit receipt was drawn by defendant and hence as between him and plaintiffs is to be construed most strongly against him. (Restatement, Contracts, § 236(d).)

It must be remembered that this is not an action between the seller and the buyer, nor between the agent and the buyer, but one between the sellers and their agent who at no time disclosed to the sellers the fact, if it were such, that he received either the $200 or the $3,300 from the buyer conditionally. As soon as the sellers accepted the buyer's contract the latter paid the $3,300 to defendant. Thereupon the plaintiffs, pursuant to the agreement, deposited their deed to the buyer in escrow. As the plaintiffs' title was good this entitled them to the balance of the purchase price. (*Montgomery* v. *Pacific C. L. Bureau,* 94 Cal. 284 [29 P. 640, 28 Am.St.Rep. 122].) The buyer became in default through no fault of plaintiffs, and refused to go through with the sale. This entitled plaintiffs to the deposit. Defendant as their agent had no right to return the deposit to the buyer. She should

have been interpleaded and then the rights between the sellers and buyer and between the broker and buyer could have been adjudicated. ██ ''In the absence of special circumstances, moneys received by one in the capacity of agent are not his, and the law implies a promise to pay them to the principal on demand.'' (*Savage* v. *Mayer,* 33 Cal.2d 548, 551 [203 P.2d 9].) The deposits were paid to plaintiffs' agent pursuant to the deposit receipt as the initial payment to the vendors in performance of the contract, and title to them vested in the vendors when they accepted the contract. (*Norris* v. *San Mateo County Title Co.,* 37 Cal.2d 269 [231 P.2d 493].)

██ The failure of the buyer's husband to sign the necessary papers to enable her to make loans did not constitute an excuse for her not going through with the agreement which she had signed. (See *Fritz* v. *Frost,* 114 Cal.App. 602 [300 P. 454]; *Russell* v. *Ramm,* 200 Cal. 348 [254 P. 532].)

This is neither, as contended by defendant, an action to enforce a penalty, which section 3369, Civil Code, forbids, an action for damages for breach of contract, nor an action to enforce a forfeiture. It is merely an action by principals against their agent to recover moneys paid to him for them pursuant to the agency. Actions between buyer and seller such as *Freedman* v. *Rector, Wardens, & V. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629], *Baffa* v. *Johnson,* 35 Cal.2d 36 [216 P.2d 13], and *Universal Sales Corp.* v. *California Etc. Mfg. Co.,* 20 Cal.2d 751 [128 P.2d 665], do not apply. In *Montgomery* v. *Pacific C. L. Bureau, supra,* 94 Cal. 284, also relied on by defendant, the plaintiff's property was sold at auction by the defendant. One of the terms of sale was that 10 days was to be allowed buyer for search of title. The buyer's attorney, on examining the abstract of title, advised that the title was defective. The buyer had paid the defendant $900 upon the purchase price. The plaintiff tendered the buyer a deed which he refused on the ground that the title was defective. The plaintiff also notified the defendant not to return the deposit to the buyer. The defendant held it and the plaintiff sued the defendant for it. The court held that the title was not defective and that the plaintiff was entitled to the down payment. The court used this language which defendant here stresses: ''It may be conceded that as to this deposit the defendant, pending the examination of the title, was a stakeholder for the parties and for its own protection.'' (P. 290.) The distinction of that case from ours lies in the fact that good title was a condition precedent, while here the provision re-

lating to financing was not such a condition. ▮ Here defendant is in the position that the defendant was in that case when the court stated, ". . . when the title was shown to be perfect, the deposit then became, according to the terms of sale, a portion of the cash payment, and the property of the plaintiff. . . . Thereafter, the defendant could not return it to the purchaser except at his own risk. Having done so, and having made a mistake, it cannot escape its just liability to the plaintiff." (P. 290.)

In *Robinson* v. *Easton, Eldridge & Co.*, 93 Cal. 80 [28 P. 796, 27 Am.St.Rep. 167], plaintiff had authorized defendants to sell their property for $10,000, giving them as commission all they might receive over that amount. They sold the property for $10,500, receiving a deposit of $1,050, giving the purchaser an agreement to return the deposit if the title was found imperfect. It was so found. The plaintiffs sued the defendants for the deposit on the theory it became their money as soon as received by the defendant. The court held, however, first, that the relation of the defendants to the plaintiffs was not that of mere agent, that because the defendant was entitled to all proceeds over the stipulated amount, there was rather a relationship of vendor and purchaser, and secondly, that if it were conceded that an agency relationship was created, the agreement between their agent and the buyer made good title a condition precedent to the money paid their agent becoming their money. Obviously it is different than the situation here. ▮ Actually, in our case, defendant is attempting to question his principal's title to the money, which became due the principal when defendant obtained their signature to the deposit receipt. This he cannot do. (See 3 C.J.S. p. 63, § 173(b).)

In *Bastanchury* v. *Times-Mirror Co.*, 68 Cal.App.2d 217 [156 P.2d 488], the court held that in an action for money had and received the agent could show that it disbursed the money sued for by the principal in due course of the business between itself and the principal, either upon legal grounds or upon equitable grounds by way of estoppel or waiver. In our case, however, the agent did not disburse the money in due course of the business between him and plaintiffs but undertook to adjudicate the rights between his principal and the buyer. This he did at his peril.

## EVIDENCE

A reading of the transcript shows that at the beginning of the trial defendant contended that the deposit receipt

showed on its face that the financing by the buyer was a condition precedent. (In fact, defendant made a motion for nonsuit based on that ground.) Additionally, after plaintiffs had testified that defendant had not informed them of any such condition at the time they approved the agreement, defense counsel asked defendant what plaintiffs said in regard to the refinancing clause in the agreement. Plaintiffs objected. Considerable argument followed in which defendant stated "It has never been our position Mr. Thiele is not bound by the instrument . . . ," that the purpose of the question was to explain any ambiguity in the deposit receipt, "if there is no question of ambiguity about the refinancing or about the second mortgage I will not pursue it further." The court then stated it saw no ambiguity. No attempt was made by defendant to pursue the matter further, nor was defendant asked what, if anything, he stated to plaintiffs. There is no offer of proof nor statement in the briefs that plaintiffs were told at any time prior to the failure of the buyer to accomplish her financing that the purchase and the deposits were conditional. ■ It is true that on a number of occasions defendant attempted to prove the conversations between him and the buyer, apparently to show that both he and the buyer understood the agreement and deposits to be conditional, but until such condition was disclosed to the plaintiffs, such testimony would not be admissible. Again, this is not an action between the buyer and seller, but one between an agent and his principal, whose signature the agent has obtained to a contract without any disclosure of the alleged conditional nature of that contract. ■ The rights between the buyer and seller cannot be litigated in this action to which the buyer is not a party.

## COMMISSIONS

■ The approval signed by plaintiffs provides that in case of a forfeited deposit the agent shall retain one-half thereof, not exceeding the amount of the commission earned. That commission was 5 per cent of the selling price of $14,250, or $712.50. Plaintiffs contend that defendant is not entitled to keep any portion of the $3,500 because he did not file a counterclaim or cross-complaint. He is not required so to do. Plaintiffs' complaint alleged that defendant is indebted to plaintiffs in the sum of $3,500 for moneys had and received. Defendant's answer denied that he was indebted to plaintiffs in that or any other sum. Under the contract, one-half of the deposit up to the amount of the commission

was to be retained by defendant. In other words, it is his money. As to the right to retain the commission, the rule above quoted from *Bastanchury* v. *Times-Mirror Co.*, 68 Cal. App.2d 217 [156 P.2d 488], applies. Plaintiffs' proof, therefore, shows that they are entitled only to that portion of the $3,500 which does not belong to defendant, namely, the difference between $3,500 and $712.50, or $2,787.50. The trial court should have so found, although in fairness to it, it must be pointed out that it was never asked to so find. Pursuant to the authority invested in us to make findings (Code Civ. Proc., § 956a) the findings are amended accordingly.

The judgment is likewise amended to award plaintiffs judgment for $2,787.50 only. It is affirmed in that amount. Plaintiffs will recover costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied March 18, 1953.