[Civ. No. 15442.   First Dist., Div. One.   June 24, 1953.]

LOUIS KARRAS et al., Appellants, v. TITLE INSURANCE AND GUARANTY COMPANY, Respondent.

Davis, Barber & Zief for Appellants.

Royal E. Handlos for Respondents.

BRAY, J.—Plaintiffs appeal from a judgment in favor of defendant title company.

### QUESTIONS PRESENTED

1. Where parties to an exchange agreement deposit certain documents with a title company to be held by it for further instructions, may the company return to one party a document deposited by him without the consent of the other?

2. Have plaintiffs proved damage?

### FACTS

The complaint charged defendant title company, in the first count, with negligence in the handling of an escrow transaction by returning a certain promissory note to one of the parties; in the second count defendant is charged with conversion, and in the third count with breach of the implied covenant to use diligence in following instructions.

Plaintiffs and J. R. and Vera S. Ryan entered into a written contract wherein plaintiffs agreed to transfer their interest in a certain hotel business and shares of stock in a certain realty company, to the Ryans in exchange for the interests of the latter in a certain hotel building. It provided that "D'Orazi Investment Company is hereby authorized as agent for both parties hereto . . ." The Ryans agreed to, and by the agreement did, assign to plaintiffs promissory notes totalling $12,330, photostatic copies of which were said to be attached. (Although no photostats were attached, the two notes in question were intended to be included.) "The parties hereto and each of them do hereby appoint and designate the Titel [sic] Insurance and Guarantee [sic] Company . . . as the escrow holder in the herein matter for the purpose of effectively carrying out the terms of the herein agreement." Within five days the Ryans were to deposit with defendant an assignment and actual transfer, among other documents, of the above mentioned notes, and plaintiffs, among other documents, were to deposit with defendant a transfer of said stock and a release of it by the pledgee. An unsigned third party to the agreement was the realty company whose stock was to be transferred to the Ryans, and who was a part owner in the hotel business which plaintiffs were to exchange with the Ryans.

April 19, 1950, Victor D'Orazi, owner of D'Orazi Investment Company, took the original contract signed by plaintiffs and the Ryans, but not by the realty company, to defendant's office where he was waited on by Vice-President Bell. D'Orazi testified he informed Bell that he was representing both parties to the exchange, that Bell's company was to handle it, that he wanted an escrow number on it, that as both principals were short of money it might be a difficult escrow, so Bell "should keep the documents until I [D'Orazi] could get them all in the file." Bell testified that he could not remember the conversation "beyond the fact that we may have discussed what might happen, what probably would be the manner in which the deal would be closed." He denied, however, that D'Orazi said he represented both parties. He did open up a file and give it a number. D'Orazi gave him the contract for which Bell gave him a receipt showing "Application 448471 . . . Received of D'Orazi Inv. Co. . . . Agreement of Exchange . . . which we are to hold for Mr. D'Orazi." D'Orazi signed the receipt "Approved and accepted." Bell did not read the agreement. On April 20th, D'Orazi delivered to Bell cer-

tain documents including certain leases which he had received from the Ryans and which the agreement provided were to be assigned to plaintiffs. Defendant's receipt therefor had the same application number as the agreement receipt and a notation to assign the documents to plaintiffs. April 25th, D'Orazi delivered to Bell certain documents apparently received from plaintiffs. Defendant's receipt therefor under the same number stated as to one of the leases listed, "Make assgt. to Bay Shore Realty" and as to all documents, "Hold all for further instructions." Then on the same day D'Orazi delivered to defendant two promissory notes, Herndon to Ryan, one for $2,900 and the other for $9,600, assigned by the Ryans to plaintiffs under the terms of the agreement. The receipt therefor bears the same number as the others and states "To be held in file." Under "Approved and accepted" appears D'Orazi's signature. On June 16th, Meizel, one of the plaintiffs, delivered certain documents to defendant and was given a receipt under the same number for those documents plus all papers regarding plaintiffs' hotel theretofore deposited by D'Orazi. The receipt stated they were to be delivered or recorded on receipt of the documents and moneys which the Ryans were required to deliver under the agreement. The receipt referred to the original agreement and stated that that agreement was on file with defendant for information only and not as a part of the escrow, and defendant was instructed to disregard it and to be guided solely by the instructions contained in the receipt. The approval of this receipt by Meizel constituted the first formal instructions given defendant. On June 30th, before all documents and the stock mentioned in the agreement were deposited, defendant, without notice to or permission of either plaintiffs or D'Orazi, delivered both notes to J. R. Ryan. In July Bell notified D'Orazi that the notes were no longer in the file and the latter informed plaintiffs. Demand was then made of defendant that it get the notes back, and defendant was notified it would be held responsible. Later, defendant was able to get the $2,900 note returned to the file, but the $9,600 note never was returned, Ryan having delivered it to an attorney for satisfaction of a judgment against him. From time to time thereafter other documents and the stock provided for in the agreement were deposited with defendant by D'Orazi.

D'Orazi testified that the loss of the note, together with defects which were found in Ryan's title and which had to be cleared up, delayed the closing of the transaction. The Ryans

had taken possession of plaintiffs' hotel business. D'Orazi testified that before the closing of the escrow arrangements this business was "subject to a receivership." Plaintiffs' brief states that this meant that the Ryans had lost the business. On October 13th a detailed letter of instructions to the defendant was signed by the Ryans, which among other matters stated that the $9,600 note required to be deposited under the agreement was now in possession of certain attorneys as security for the satisfaction of a judgment against Ryan. Defendant was instructed to deliver it to plaintiffs when delivered to defendant by said attorneys. Defendant was instructed to use any cash it might have received from the leases on plaintiffs' hotel properties to obtain the note and if such moneys were not sufficient the Ryans stated they would supply the necessary additional cash. The letter further stated that J. R. Ryan had executed his note to plaintiffs in the sum of $9,600 which would be deposited by D'Orazi. This note was security for the return of the Herndon $9,600 note and was to be returned to Ryans if and when the defendant should receive the Herndon note and deliver it to plaintiffs. Mrs. Ryan joined in the instructions upon the understanding that she would not be liable on the J. R. Ryan note. Plaintiffs, the same day, signed a consent to this letter of instructions subject to the reservation and agreement that they did not waive in any way their rights arising from the withdrawal of the Herndon note. On October 18th, plaintiffs signed instructions to defendant in effect telling defendant to complete the exchange, and in doing so to deliver the J. R. Ryan note to Pacific National Bank and the Herndon note, if and when received, to a designated one of the plaintiffs. The exchange was then effected and while the record does not definitely disclose, apparently the notes were distributed as instructed.

The court found that the allegation in plaintiffs' complaint that on or about April 25, 1950, "defendant . . . then and there took delivery of, and agreed to hold and handle, said papers, instruments and documents as the escrow holder in said transaction" was untrue. It further found that the approval and consent of plaintiffs to the delivery by defendant of the Herndon note to the Ryans was not necessary or required. It also found that the documents deposited with defendant were not to be delivered or used by defendant until it received specific instructions from all the parties as to the closing of the transaction, and that when it returned the

note to Ryan it had not received such instructions nor sufficient funds and documents to close the transaction; that in delivering the Herndon notes to defendant, D'Orazi was acting as the Ryans' agent and therefore the Ryans were entitled to withdraw them.

1. *The deposit of the documents.*

The evidence does not support the court's findings that in depositing the notes D'Orazi was acting solely for the Ryans nor that defendant did not undertake to hold and handle the documents for the parties. The fact that the escrow was not complete at the time of the return of the notes is immaterial. The uncontradicted evidence establishes that D'Orazi went to defendant, gave it a copy of the instrument, asked for and received an escrow number. All the receipts bore the statement "It is understood that the title evidence to be issued will be in our usual form . . ." Thus the defendant knew these documents were being deposited preliminarily to the issuance by defendant of title insurance. In view of the court's finding we must accept Bell's testimony that D'Orazi did not tell him he was the agent of both parties. But the agreement which Bell accepted said so. Moreover, the agreement provided that each party was to deposit specified documents in escrow with the title company. These were deposited from time to time by D'Orazi, pursuant to the agreement and not as representing alone the particular party who gave him the particular document. Defendant knew that these documents were being deposited pursuant to the agreement. ■ "Escrow instructions are a customary and necessary means of consummating real estate transactions, they do not take the place of the agreement for sale but merely carry it into effect." (*Keelan* v. *Belmont Co.*, 73 Cal.App.2d 6, 12 [165 P.2d 930].) They were all given the same number. Receipts for them were given stating that they were to be held, in one instance, for D'Orazi, in the others for further instructions. On April 20th the agreement and leases which came to defendant from the Ryans through D'Orazi were, according to defendant's own receipt, to be assigned to plaintiffs. The agreement as between plaintiffs and the Ryans was a binding agreement. The fact that it was not signed by the third party is unimportant. It never was signed by that party. Both the Ryans and plaintiffs treated the transaction as solely between them. On June 16th the Ryans gave specific instructions which they said were to supersede the agreement.

At the time, however, plaintiffs had not consented that they would. ■ So far as the relationship between plaintiffs and defendant was concerned the documents which defendant then held were presented to defendant by D'Orazi, acting as agent of both parties and pursuant to the agreement. Defendant had no right to ignore that agreement at the instance of only one of the parties to it. At the time plaintiffs agreed to these instructions the notes had already been delivered by defendant to Ryan. Plaintiffs made their ·consent subject to the reservation of all rights arising from such delivery.

■ The situation here is a very simple one, in spite of the facts that the stock had not been deposited, nor was the escrow in condition to close, nor that before the escrow was finally completed much time and many documents were involved. The agent of the two principal parties to a transaction goes to the title company, receives an escrow number, gives it the agreement under which he was acting and then proceeds to deposit for *both parties* the documents required by that agreement to be deposited. Obviously the title company thereby "took delivery of, and agreed to hold and handle, said papers, instruments and documents as the escrow holder in said transaction." The withdrawal by either party of the documents deposited for him by the agent of both would be a violation of the agreement, and the title company would have no right to participate therein without the consent of the other party. Had D'Orazi himself withdrawn the note and delivered it to Ryan he would have been in the position of the agent in *Holloway* v. *Thiele,* 116 Cal.App.2d 68 [253 P.2d 131].

■ ■ "It is the duty of an agent to obey the instructions of his principal and exercise in his employment reasonable skill and ordinary diligence, and, if defendant violated instructions or acted negligently in retaining the check in its files, it would ordinarily be liable for any loss occasioned by its breach of duty." (*Rianda* v. *San Benito Title Guar. Co.,* 35 Cal.2d 170, 173 [217 P.2d 25].) In that case the court pointed out that the above principle applied whether the title company there was to be considered as a true escrow holder, or as an agent of the parties. So here, whether defendant be considered a true escrow holder or as defendant claims, a depositary, it was required to obey instructions, namely, hold the documents until the further instructions of both parties. ·

A somewhat similar situation to that in our case occurred

in *Citizens Nat. Bank* v. *Davisson*, 229 U.S. 212 [57 L.Ed. 1153, 33 S.Ct. 625]. There, the contract between the parties, together with a check of one of them, was placed in an envelope and taken to the bank by the parties. On the envelope was endorsed that the check was "to be held in escrow until September 10, when final settlement is to be made. Deed and abstract to be placed in escrow with this." (P. 220.) Up to September 10th, the title of the property to be transferred had not been cleared so the parties extended the time of performance. Sometime after September 10th and before the final clearing of title, the bank returned the check to the maker. The court, in holding the bank liable, pointed out that the memorandum on the envelope was not a complete expression of the agreement of the parties and was unintelligible except by reference to the agreement in the envelope which the bank did not see. It then stated (p. 223) : "Upon the whole case, we are clear that the effect of the deposit of the contract and check with the bank was to constitute it a custodian or stakeholder for the benefit of both parties, holding the money without right or interest in it, bound above all things not to take sides between the parties, and answerable ultimately to the one or the other, according to their respective rights as between themselves. . . .

"The fact that no officer of the Bank read this contract or knew of its terms is of no avail to the Bank. By the very circumstances of the deposit it was put upon notice that it was assuming a duty that could not be fully understood or fairly performed without a knowledge of the contents of the contract; it had possession of that instrument, with full opportunity to examine it; except for its own negligence it would have known the terms thereof."

*Miller* v. *Sears*, 91 Cal. 282 [27 P. 589, 25 Am.St.Rep. 176], cited by defendant, is not in point, as there the papers were delivered to the defendant to hold by the plaintiff alone and such delivery was not absolute and beyond the control of the plaintiff, who later withdrew them. Moreover, the court found that there was no agreement of sale between the plaintiff and the purchaser.

Although the principles of *Rianda* v. *San Benito Title Guar. Co.*, *supra*, 35 Cal.2d 170, apply, the facts are different. There the title company kept uncashed a check deposited with it by the parties to a real estate transaction. This check was sent to the company which had undertaken to hold the documents for the parties, without any instructions to cash it.

Even later instructions failed to mention the check. Over a month after the check was given the defendant, the buyer drew his account from the bank so that the check could not be paid and refused to go ahead with his agreement to purchase. In holding that the seller could not recover from the title company for not cashing the check, the court pointed out the complete absence of any instruction to it to cash the check. Under the instructions, it was to do as defendant should have done here with the note, hold it. As it did that, it could not be held liable.

### 2. *Damages.*

As we have stated, the court erred in finding that defendant would not be liable for returning the Herndon note. However, a further question arises which was not determined below. Have plaintiffs proved any damage?

▮ The *fact* that plaintiffs accepted a note signed by J. R. Ryan as security for the return appears in the evidence but the *circumstances* of its receipt do not. D'Orazi testified that to close the transaction plaintiffs accepted the Ryan note "with the understanding that they were not to waive any damages that might have been incurred from the failure to receive the note on the part of the title company, release of it." There is no evidence in the case that the Herndon note was collectible. The fact that plaintiffs received $1,200 on the $2,900 Herndon note is no evidence of the collectibility of the $9,600 note. Nor is there any evidence that the Ryan note given for it, is not collectible. D'Orazi testified that at the time Ryan delivered the Herndon note to the attorneys for the judgment creditor, the Ryans were in financial stress and that the Ryans lost by receivership the hotel business they were here acquiring. However, that, and the fact that Ryan had paid nothing on the note at the time of trial, is not sufficient evidence of the note's uncollectibility. Obviously, if the Herndon note is uncollectible, or if the Ryan note is collectible, plaintiffs have not been damaged by defendant's action. The true facts will have to be determined on a new trial.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 24, 1953, and respondent's petition for a hearing by the Supreme Court was denied August 20, 1953.