[Civ. No. 26758. Second Dist., Div. Two. May 21, 1963.]

DON C. MOSHOS, Plaintiff and Respondent, v. GENERAL CASUALTY COMPANY OF AMERICA, Defendant and Appellant.

Anderson, McPharlin & Conners and William J. Conners for Defendant and Appellant.

James M. Hall for Plaintiff and Respondent.

HERNDON, J.—General Casualty Company of America appeals from a judgment rendered against it following a non-jury trial. Judgment was entered against the Colonial Escrow Corporation and Jack D. Bowman also, but no appeal has been taken by these defendants. As grounds for reversal, appellant urges that the evidence is insufficient to support the judgment and that the court abused its discretion in denying appellant's motion for a continuance made on the day of trial for the purpose of seeking a substitution of attorneys. With one exception, all the material and relevant facts were established either by the allegations and admissions in the pleadings or by stipulations made during the pretrial proceedings.

At all times here material, defendant Colonial Escrow Corporation was bonded by appellant in accordance with the provisions of sections 17202 and 17203 of the Financial Code. During this same period and until some time in mid-December of 1958, defendant Jack D. Bowman was the president of Colonial Escrow Corporation, owned all of its stock, and paid the salary of its only other employee.

Shortly prior to September 17, 1958, plaintiff and defendant Jack D. Bowman entered into an agreement whereby plaintiff would lend to Bowman the sum of $8,000 and receive in return Bowman's note for $10,000 plus interest. As security for this loan, Bowman agreed to assign to plaintiff a third party note and trust deed and to execute a grant deed conveying to plaintiff certain other real property. It was further agreed that the documents evidencing these items of security, together with copies of policies of title insurance and fire insurance, would be deposited with defendant Colonial Escrow Corporation pending repayment of the loan. Plaintiff at the time was unaware of Bowman's relationship with the escrow company.

Bowman signed at least one copy of a document captioned "Assignment Instructions," executed all the necessary security documents, and delivered them to plaintiff. Plaintiff paid Bowman the $8,000 agreed upon, also signed at least two copies of the "Assignment Instructions" and transmitted one of them and the security documents to the defendant escrow company. On the "Assignment Instructions" appeared the name and address of the Colonial Escrow Corporation, the date and the words: "Escrow No. 5802." The instructions themselves read as follows:

"The undersigned agrees to hand to Jack D. Bowman, outside of escrow the sum of $10,000 when you can hold for the undersigned the following: [the security documents above described]. It is understood that the undersigned is to be at no expense in connection with this transaction." A line for plaintiff's signature followed and immediately below it there appeared the further statement that: "The above instructions are hereby accepted and agreed to in their entirety, and charges in connection herewith are to be charged to the account of the undersigned." A line then appeared below which there was typed the name of Jack D. Bowman. There was no designation to indicate his connection with the escrow company.

Bowman testified that sometime about mid-December of 1958, he terminated all his relations with the escrow company and that on January 2, 1959, he gave instructions that all the security documents held by the company under the above numbered escrow be returned to him. The escrow officer, who had replaced Bowman's former employee, immediately surrendered the items to him. However, the following appears in Bowman's testimony: "The Court: Did you in any way tell her that you received [the money]? The Witness: Yes, yes, she was aware that I had received the money. The Court: Thank you. All right."

Finally, it is conceded that Bowman never repaid the loan and that the securities since have been disposed of and are not now recoverable. Plaintiff brought the instant action to recover his $8,000. Bowman stipulated that judgment in this amount might be entered against him. The escrow company and the appellant bonding company also were held liable in the amount of $4,000, the damages found to have been suffered by plaintiff as the result of the wrongful release of the securities, that is to say, the fair market value of the land

conveyed by the grant deed as shown by its subsequent sale to a third party.

The only factual issue upon which the evidence is conflicting is whether the copy of the "Assignment Instructions" returned to the escrow company by plaintiff was signed both by Bowman and by plaintiff, or whether plaintiff inadvertently returned a copy signed only by himself. Viewing the evidence in the light most favorable to the respondent, as we are required to do, it is apparent that the trial court reasonably could have given credence to plaintiff's unqualified testimony that the copy which he sent to the escrow company, along with the securities, was signed by both parties. Determination of the weight to be given the evidence and the credibility of witnesses is solely the province of the trier of the facts. (*Viner* v. *Untrecht,* 26 Cal.2d 261, 267 [158 P.2d 3].)

Additionally, in view of all the circumstances here present, there would appear to be no merit in appellant's claim that the escrow company would have been entitled to return the securities to Bowman without contacting plaintiff even if, as it contends, plaintiff had mistakenly delivered these securities to the escrow company with a copy of the instructions signed only by plaintiff. (Cf. *Karras* v. *Title Ins. & Guar. Co.,* 118 Cal.App.2d 659, 664-666 [258 P.2d 866].) Clearly, the evidence was sufficient to support the trial court's determination that defendant escrow company had failed to "faithfully perform its obligations with respect to said escrow No. 5802, and negligently breached its duty owed to the plaintiff." Therefore, it necessarily follows that judgment against appellant upon its bond likewise was proper.

Regarding appellant's second assignment of error, namely, that the trial court abused its discretion in refusing to continue the trial of the action pending a hearing on appellant's motion for a substitution of attorneys, the record reveals that appellant was served with summons and complaint on March 9, 1959. Deciding to rely upon its agreement with its principal, it chose to leave its defense to the principal, Colonial Escrow Corporation, rather than to make its own defense.

Apparently as the result of some unexplained disagreement between principal and surety regarding the payment of the cost of appellant's defense, the attorney who had been representing both these defendants (whose defenses, of course, were identical in this instance) requested that appellant pay some portion of his fees and costs therein. On September 7,

1960, the date long previously set for the trial, appellant appeared for the first time before the trial court with new counsel and represented that on that morning it had filed with the clerk notice of a motion for substitution of attorneys and for hearing on September 12, 1960.

On this basis alone, it requested the court to continue the trial, although both sides had announced that they were ready for trial with their witnesses available. Appellant did not then allege, nor does it now, that its former attorney was in any way unqualified or unprepared to handle their defense, or that he ever had asserted or intimated that he would not do so without prior payment of his requested fee.

Appellant's new counsel conceded that his client had been so derelict in its attention to its own defense that he was in a poor position to seek a continuance. He urged, however, that the court possessed the discretionary power to grant it. When it was agreed that substitution of counsel could be made effective forthwith if so desired, appellant's new counsel urged that the matter be continued "several weeks" in order to allow him time to prepare because he was completely unacquainted with the proceedings.

Plaintiff very properly opposed the continuance. At this point appellant's former counsel stated: "Your Honor, I believe I have a good defense for General Casualty and Colonial Escrow and that is the reason that I carried the brunt of this all along. I so informed counsel for General Casualty. However, if they see fit to step in the picture without my help, then I will stand by and just represent my client. I will be glad to associate with them if they see fit."

To this offer appellant's new counsel replied, "Well, inasmuch as the stipulation I think would lack sufficient signatures to become effective on the spot, I would request association for the moment for the purpose of proceeding up to this time." The following then ensued: "The Court: Very well. Mr. Conners: [new counsel] If Mr. Borges will be good enough to do that—— Mr. Borges [former counsel] : I'd be more than glad to. The Court: All right. Very well. You may proceed."

The trial thereupon was commenced, and throughout the proceedings both appellant's new and former counsel actively and vigorously participated therein with no apparent lack either of ability or of familiarity with the facts. For reasons relating to the taking of additional evidence as to damages, the cause subsequently was scheduled for later hearings on October 30, 1961, December 11, 1961, and January 26, 1962. De-

spite appellant's speculations in its brief regarding the *possibility* that it *might* have overlooked some pertinent evidence by reason of its substitution of new counsel, it made no suggestion during the 18 months that followed the commencement of trial, that it had acquired any additional information which it desired to present to the court.

Although a substitution of attorneys generally is a matter of right (Code Civ. Proc., § 284), a continuance is not. Manifestly, there has been not the slightest showing of any abuse of discretion on the part of the trial court in connection with this action. (*Consolidated Pipe Co.* v. *Gries,* 103 Cal.App.2d 901, 903 [230 P.2d 385] ; *Flynn* v. *Fink,* 60 Cal.App. 670, 672-675 [213 P. 716].)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.