[No. 35660.   Department Two   March 23, 1961.]

KENDALL A. SANWICK, JR., *et al.*, *Respondents*, v. EDWARD
M. McFERRAN, *Appellant.*[1]

*Chester A. Lesh* and *Phil McIntosh*, for appellant.

*Weter, Roberts & Shefelman, Harold S. Shefelman, John
S. Robinson*, and *Hulbert S. Murray*, for respondents.

OTT, J.—March 1, 1957, Edward M. McFerran, being the
owner of certain real property in King County, granted to
K. A. Sanwick, Jr., an exclusive option to purchase the
property within one year for a consideration of $6,000. The
portions of the option agreement which are here material
are as follows:

"1. That seller is the owner of that real estate which is
described in that 'Exhibit A' attached hereto, *being a po-*

[1]Reported in 360 P. (2d) 580.

*tential contract* written upon form # 109 of the Puget Sound Title Insurance Co.

"   .   .   .

"3. In consideration of the said payment seller does hereby grant unto purchaser and to his heirs, *assigns,* and successors, the right and option to purchase the said real estate within one year from the date hereof upon the terms and conditions *specified* in said 'Exhibit A.'

"4. Seller will forthwith order and procure issuance of title report by the Puget Sound Title Insurance Co. evidencing the condition of title to the said real estate, and will supply to purchaser a copy of such report.

"5. In case the title to said property is not good and cannot be made good within thirty days, and is not acceptable to the purchaser upon delivery of the said title report to him, then this agreement shall be void and the option money herein receipted for shall be refunded.

"6. At the option and request of purchaser these parties, at any time within the said one year option period, *will make and execute an agreement as specified in 'Exhibit A',* but in the event that purchaser's option is not timely exercised then all of his rights hereunder shall terminate." (Italics ours.)

Exhibit A which was attached to the option agreement provided, *inter alia,* that the property was "Free of incumbrances, except: such as may have been disclosed by a title insurance company title insurance report previously issued and supplied to purchaser." It also provided that total consideration for the property was $187,500 (exclusive of the option payment), with a principal payment of $54,000 upon the date the option is exercised, and an installment method of payment for the balance. Exhibit A and the title report contained identical descriptions of the property.

The option agreement and the initialed exhibit A were deposited with the escrow agent, the Puget Sound Title Insurance Company. The escrow instructions provided, *inter alia:*

"   .   .   .   you are to deliver to said optionee a copy of the title report and at that time he is to approve Exhibit A by initialing said Exhibit. It is understood that in order for the optionee to exercise his option he will have to *contact Puget Sound Title Insurance Escrow Department and perform in accordance with the terms of that certain real*

*estate purchase option handed you herewith and sign the contract known as Exhibit A."* (Italics ours.)

January 7, 1958, McFerran, for an additional consideration of $6,000, extended Sanwick's option to purchase to March 1, 1959. Sanwick, as authorized by the option agreement, assigned 75 per cent of his option to Howard A. Parker, Carl A. Olson, Craig G. Harmon, Roland G. Pray, and Robert C. Detrich.

February 27, 1959, Sanwick and his assignees went to the office of the escrow holder to exercise their option and to sign the contract for the purchase of the property. They deposited the required $54,000 down payment with the escrow holder. The "potential contract, written upon form # 109 of the Puget Sound Title Insurance Co." referred to as exhibit A, did not contain the the names of the recent assignees of Sanwick, nor did it contain the actual covenants affecting the title to the property as shown in the title report. The escrow agent prepared the contract of sale which was intended to include the names of the purchasers, the terms *specified* in exhibit A, the actual covenants affecting title as shown by the title report, and the standard covenants of sale used in form 109. Sanwick and his assignees signed the contract.

The escrow agent notified McFerran by certified mail that Sanwick and his assignees had exercised their option, and requested him to come to the office of the company and execute the necessary documents as seller. March 3, 1959, McFerran called at the office of his escrow agent and refused to sign the contract his escrow agent had prepared.

The purchasers commenced this action for specific performance of the contract and for damages. Defendant's demurrer to the complaint was overruled. McFerran's answer denied the material allegations of the complaint and alleged an affirmative defense that the option agreement did not describe the property involved with sufficient certainty and was therefore void under the statute of frauds. Various depositions were taken and fifteen exhibits received in evidence. The deposition of the scrivener of the contract disclosed that in drawing the contract of sale, he had omitted

one of the covenants affecting title disclosed by the title report, and had provided an improper date from which interest on the deferred payments would be computed.

Both parties moved for summary judgment. The defendant contended that the plaintiffs had not accepted the offer within the option period, that the contract of sale which plaintiffs signed constituted a counter offer which was not accepted by the defendant, and that because of the inadequate description the contract was void. The plaintiffs contended that the minds of the parties had met on the terms of the sale, that the option had been timely exercised, that the scrivener's errors in drawing the contract of sale after the option had been exercised were errors of mechanics and that the contract should be reformed to conform with that upon which the minds of the parties had met. The plaintiffs further contended that the alleged inadequate description of the property did not show the contract to be void under the statute of frauds. A partial summary judgment was granted, in which the court found that the option had been timely exercised, ordered the contract reformed in accordance with the actual agreement of the parties, denied defendant's motion for summary judgment, and left the issue of damages to be determined. The reformed contract, prepared in accordance with the court's order, was signed by the plaintiffs. Subsequently, the plaintiffs withdrew, without prejudice, their claim for damages. Both parties then moved for a final summary judgment.

The trial court granted the plaintiffs' motion, allowing specific performance of the contract as reformed, and denied defendant's motion. The trial court, in its findings of fact, found that the purchasers had timely accepted the seller's offer of sale, that the discrepancies between exhibit A and the contract drafted by the escrow agent were errors in the mechanics and did not constitute a counter offer, and concluded that the minds of the parties had met upon the terms and conditions of the contract on February 27, 1959. It further found that the reformed contract, drawn in accordance with the terms of partial summary judgment which had been signed by plaintiffs, contained the actual

agreement of the parties, and that it be executed by the defendant, and specifically performed. The trial court found that the legal description contained in the option agreement and in exhibit A did not violate the statute of frauds. The defendant-seller has appealed.

Although he asserts twenty-one assignments of error, he concedes that only two basic questions are raised: "(1) Did the respondents accept the offer of appellant? (2) Does the description of real estate comply with the requirements of the Statute of Frauds as to certainty?"

■ In resolving the first question raised, we are concerned with what were the terms of the offer, and in what instrument or instruments are they contained? Both the option agreement and appellant's instructions to the escrow holder state the contract to be executed is to be in accordance with the terms *specified* in exhibit A, a "potential contract written upon form # 109 of the Puget Sound Title Insurance Co.," and that the title report contained the covenants relative to the status of the title. Appellant's instructions to the escrow holder also provide that upon the exercise of the option, the purchasers must sign exhibit A. The instructions are patently ambiguous, in that the escrow agent, by one interpretation, would consider exhibit A as a "potential contract," and by another interpretation, it must require the purchasers to sign exhibit A. The instructions were drafted by the appellant. Any ambiguity contained therein must be resolved against him. *Fischler v. Nicklin*, 51 Wn. (2d) 518, 319 P. (2d) 1098 (1958), and cases cited. Applying this rule to the instant case, we construe the option agreement and the escrow instructions as requiring that the purchasers perform the conditions of the option by excuting a contract to be prepared by the escrow agent which should contain the terms specified in exhibit A, including the title covenants as shown in the title report.

■ What were the terms specified in exhibit A that the purchasers were bound to accept? The terms were that the total consideration was to be $187,500, that the purchasers were to pay $54,000 down, that the balance was to be paid in installments over a period of thirty-six months,

and that the title that the purchasers were to receive from the seller was as indicated in a title insurance report issued by Puget Sound Title Insurance Company on February 26, 1957. All of the essential terms of exhibit A and the covenants contained in the title report, together with the correction of the errors of appellant's scrivener, were incorporated into the instrument which the trial court ordered the parties to execute. The reformed contract was in full accord with the terms of the option upon which the minds of the parties had previously met. It was in conformity with the seller's offer. The seller's offer was unequivocally accepted by the purchasers. We find no merit in appellant's first contention that the respondents did not accept appellant's offer.

Appellant's second contention relating to the statute of frauds, has no application to the facts of the instant case. The appellant agreed to sell his interest in the property as he had described it. The description was the same description used in the deed by which appellant had acquired the property. The title insurance company insured the title to the property as described. By the above quoted paragraph five of the option agreement, the respondents were given the right to refuse to accept the title if they believed it was not good. The respondents, by their acceptance of the property as described, have assumed the risk of the alleged inadequacy of the description. Assuming, but not deciding, that the description is inadequate, the terms of the contract remove this transaction from the operation of the statute of frauds.

The judgment is affirmed.

FINLEY, C. J., MALLERY, DONWORTH, and HUNTER, JJ., concur.

---

May 19, 1961. Petition for rehearing denied.