[No. 2011-2.     Division Two.     December 21, 1976.]

DELSON LUMBER COMPANY, INC., *Respondent*, v. WASHINGTON ESCROW COMPANY, INC., *Appellant*, NORTHLAND PROPERTIES, INC., ET AL, *Respondents*.

*William R. Hickman* and *Reed, McClure, Moceri & Thonn,* for appellant.

*Fristoe, Taylor & Schultz, Charles C. Gordon, Perkins, Coie, Stone, Olsen & Williams, William Ronald Hulen, Monheimer, Schermer, Van Fredenberg & Smith, J. Anthony Hoare,* and *Keller, Rohrback, Waldo, Moren & Hiscock,* for respondents.

PEARSON, J.—Defendant, Washington Escrow Company, appeals a summary judgment granted in favor of plaintiff, Delson Lumber Company, for alleged breach of its fiduciary duty in handling escrowed funds.

The material facts are undisputed. Washington Escrow made partial payments of plaintiff's escrowed funds on a timber purchase in violation of a specific provision of the escrow instructions. Its defense is that the payments were in accordance with the underlying earnest money agreement and the latter agreement should control. We disagree under the particular circumstances of this case.

The underlying earnest money agreement required seller to provide title which was "free of encumbrances, or defects, except: *those of record.*" The escrow instructions of

both seller[1] and buyer provided: "Timber to be free and clear of encumbrances except: _____." The issue is to determine which agreement controls the duty of the escrow holder.

Other facts relevant to the dispute are as follows. On January 18, 1974, Washington Escrow sent a letter to plaintiff's counsel enclosing the proposed escrow instructions, a preliminary title report, a copy of the earnest money agreement, and timber deeds. The letter commented upon three outstanding encumbrances and suggested what was necessary to clear title to the timber. The letter requested plaintiff to sign and return escrow instructions, the timber deed, and his check for the requisite amount.

On January 19, 1974, plaintiff's counsel, Mr. Ernest L. Meyer, advised Washington Escrow that he would have plaintiff execute the escrow instructions and the timber deed and obtain the necessary check to close the matter. The letter contained two paragraphs concerning the status of title:

> I, of course, have no way of verifying the conclusions that you reach in paragraphs 1, 3 and 4 of your letter as to what will be necessary in order to vest good and merchantable title to this timber in Delson Lumber Co., Inc. I likewise have no way of ascertaining or verifying the authority of International Properties Corporation to act for or commit its undisclosed principal.
>
> . . .
>
> I specifically call your attention to the provisions in these escrow instructions that require that the title insurance company, which is in this case the Pacific Title Company in Montesano, to issue its commitment to insure the title of Delson Lumber Company to this timber *"free and clear of encumbrances"* with certain exceptions that are of no importance here. My suggestion to you is that you check with the Title Company to make certain that your conclusions concerning what may be necessary to permit the Title Company to issue such a commitment are correct.

(Italics ours.)

On January 21, 1974, plaintiff forwarded the escrow in-

---

[1]The seller was International Properties Corporation.

structions, an executed timber deed, and his check for $25,819.77. The covering letter specifically referred defendant to Mr. Meyer's letter of January 19, 1974. The escrow instructions contained three other provisions pertinent to the dispute:

### CONFLICTING DEMANDS PROVISION

In the event conflicting demands are made or notices served upon you with respect to this escrow, the parties hereto expressly agree that you shall have the absolute right at your election to do either or both of the following things: Withhold and stop all further proceedings in and performance of this escrow, or file a suit in interpleader and obtain an order from the court requiring the parties to interplead and litigate in such court their several claims and rights among themselves.

### CANCELLATION PROVISION

These instructions shall be irrevocable by the undersigned, for a period of 60 days from date the preliminary report of title is delivered to your office and shall be performed within said period or thereafter until written demand is made upon you for the cancellation hereof.

### HOLD HARMLESS PROVISION

All parties further agree, jointly and severally, to pay on demand, as well as to indemnify and hold you harmless from and against all costs, damages, judgments, attorney's fees, expenses, obligations and liabilities of every kind or nature suffered or incurred in connection with or arising out of this escrow.

Between January 28 and January 30, 1974, defendant made certain disbursements from the escrowed funds which are the subject matter of this dispute, and recorded a timber deed of plaintiff's. This deed differed from the tendered deed by adding: "Excepting that the land is encumbered by several real estate contracts of record, which contracts shall remain the responsibility of the Grantor herein."

In early February 1974 it became evident that one of the intermediate contract vendees would not accept the payoff terms. Accordingly, plaintiff's counsel notified Washington Escrow that it would exercise its cancellation rights "unless this transaction is closed as per the escrow instructions

within the time designated." On March 22, 1974, plaintiff withdrew its offer to purchase the timber and demanded return of the escrowed funds.

Notwithstanding plaintiff's cancellation, defendant sought to force closure of the transaction by delivering to plaintiff the recorded timber deed and title insurance policy, representing in a letter that these instruments were pursuant to the earnest money agreement and the escrow instructions. The trial court ruled that plaintiff was entitled to summary judgment against defendant and we agree.

An escrow holder occupies a fiduciary relationship to all parties to the escrow and owes the same duty of fidelity that an agent or trustee owes to its principal. *National Bank v. Equity Investors*, 81 Wn.2d 886, 506 P.2d 20 (1973).

As a general rule "an escrow agent . . . becomes liable to his principals for damage proximately resulting from his breach of the instructions, or from his exceeding the authority conferred on him by the instructions." *National Bank v. Equity Investors, supra* at 910.

The undisputed facts disclose that Washington Escrow breached its instructions and paid out escrowed funds without assuring that plaintiff would receive the requisite title. Any doubt or uncertainty about its duty arising from the inconsistency between its instructions and the underlying earnest money agreement could and should have been resolved before defendant proceeded to close the transaction.

Defendant relies upon cases which hold that conflicts between escrow instructions and the underlying agreement should be controlled by the latter agreement; or that where ambiguities are created by differences in the two agreements they should be construed together; or that escrow agreements do not take the place of the agreement for sale, but are a vehicle for carrying it to completion. *See Hays v. Hug*, 243 Ore. 175, 412 P.2d 373 (1965); *Leiter v. Handelsman*, 125 Cal. App. 2d 243, 270 P.2d 563 (1954); *Karras v. Title Ins. & Guar. Co.*, 118 Cal. App. 2d 659, 258 P.2d 866, 76 Cal. Rptr. 141 (1969); *Ashburn v. Miller*, 161 Cal. App. 2d

71, 326 P.2d 229 (1958). *See Sanwick v. McFerran*, 57 Wn.2d 875, 360 P.2d 580 (1961).

Those rules may be applicable where the dispute concerns the immediate parties to the underlying agreement of sale. They should not, however, be used to diminish the duty of an escrow holder to act strictly in accordance with the provisions of the escrow agreement. For the latter agreement is the controlling instrument between the escrow and his principal. *See National Bank v. Equity Investors, supra.*

Furthermore, the letter from plaintiff's counsel at the inception of the transaction should have resolved any uncertainty with reference to plaintiff's intention that the escrow instructions were to control. At the very least, defendant was put on express notice of the conflicting instruments and should have resolved the conflict before proceeding with closure of the transaction. Such is the import of the conflicting demands provision of the escrow instructions set forth above.

Defendant also contends that plaintiff was not damaged, since it received the timber deed and hence had the right to remove timber from the land. This contention requires us to assume that the encumbrances of record would not, as a matter of law, interfere with defendant's right to remove the timber. This we will not do. There was no evidence presented at the time the summary judgment motion was heard that plaintiff was asserting any right to cut the timber.[2] In fact the undisputed affidavits showed plaintiff had withdrawn from the purchase contract as an alternative to accepting a closing with knowledge of the seller's disputed title.

Moreover, we hesitate to establish a rule that would require a party to litigate disputed contract rights with third persons[3] as a condition to recovering monies wrongfully paid in violation of the escrow instructions.

---

[2] The 1-year timber cutting right had expired by the time summary judgment was entered.

[3] The title insurance policy did not establish title to the timber in either the seller (International) or the buyer (plaintiff).

■ We hold that liability attaches to the escrow where it improperly parts with the escrowed funds. The measure of damages is the sum improperly paid whenever the underlying transaction is not consummated and the benefit of the bargain lost, and where there is no issue of estoppel by ratification. *See Tucson Title Ins. Co. v. D'Ascoli,* 94 Ariz. 230, 383 P.2d 119 (1963). Since the underlying transaction was not consummated and there was no issue raised as to ratification, the trial court properly awarded damages in the sum improperly paid from the escrow.

■ Finally, defendant assigns as error the trial court's dismissal of its counterclaim seeking indemnity for costs and attorney's fees under the hold harmless provisions of the escrow agreement. We find no error. Indemnity provisions are subject to fundamental rules of contract construction and are to be construed so as to carry out the intent of the parties. *Northern Pac. Ry. v. Sunnyside Valley Irrigation Dist.,* 85 Wn.2d 920, 540 P.2d 1387 (1975).

Indemnity provisions which purport to exculpate an indemnitee from liability for losses flowing solely from his own acts or omissions are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor. *Jones v. Strom Constr. Co.,* 84 Wn.2d 518, 527 P.2d 1115 (1974).

While the language of the provision is broad, there is no express language which purports to exculpate defendant from its own breach of the instructions. Were we to construe the provision in that fashion, defendant's duty and promise under the agreement would be illusory. It would be unreasonable to inject that inference into the agreement. It would be reasonable to infer that the parties intended the hold harmless provision to protect defendant from third-party claims. We resolve any doubt in favor of plaintiff.

Judgment affirmed.

PETRIE, C.J., and REED, J., concur.