Filed 6/2/21  Massis v. Shahbaz CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NIMER ANTON MASSIS,<br><br>  Plaintiff and Appellant,<br>v.<br>DANIAL SHAHBAZ,<br><br>  Defendant and Respondent. | A155887<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC15546763) |

Plaintiff Nimer Anton Massis appeals from a judgment in favor of defendant Danial Shahbaz after a bench trial.  Massis sued Shahbaz, a real estate agent, after the sale of Massis's business went awry.

Massis argues the trial court made three legal errors in reaching its decision.  First, the court incorrectly found that Civil Code section 2344[1] obligated Shahbaz to return checks to the prospective buyer of Massis's business, Brandy Summers Rodriguez.  Second, the court applied an incorrect legal standard in finding Shahbaz was not liable because Shahbaz did not "prevent" the deal from closing.  Third, with regard to Massis's claims for negligence, breach of fiduciary duty, and interference with a contract, the court applied an incorrect legal standard in finding that Shahbaz's conduct

---

[1]     Further statutory references are to the Civil Code unless otherwise specified.

1

was not a substantial factor in causing the alleged harm. Related to this third perceived error, Massis also contends there is no substantial evidence supporting the court's finding that his failure to arrange for the transfer of the lease prevented the sale from closing. We shall reverse.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Massis hired Shahbaz to help him sell his business. The proposed sale included a lease to a retail store and a liquor license. Massis agreed to pay Shahbaz $10,000 if Shahbaz found a buyer and the transaction closed. Rodriguez responded to an advertisement for the business that Shahbaz posted, and Shahbaz prepared a proposed offer (hereafter "Asset Purchase Agreement") for Rodriguez to present to Massis.

In May 2013, Rodriguez and Massis signed a contract prepared by Massis's attorney (hereafter "Sale Agreement"), with terms that differed from those in the Asset Purchase Agreement that Shahbaz drafted. In particular, the Asset Purchase Agreement provided the sale price was $110,000, and Massis would pay Shahbaz $10,000, while the Sale Agreement provided the sale price was $120,000 and omitted mention of compensation for Shahbaz. The Sale Agreement indicated $60,000 was due immediately upon its signing, and the remainder due "one year after the closing of the liquor license escrow." The Sale Agreement also stated: "In the event the lease cannot be transferred to [Rodriguez], the Agreement is cancelled." The Sale Agreement did not contain a deadline for assignment of the lease.

Shahbaz was unaware that Massis and Rodriguez signed a different agreement than the one he drafted. On June 24, 2013, Shahbaz asked for

---

[2]     The following factual summary is derived from the settled statement on appeal and the trial exhibits in the appellate record.

2

and obtained a signed copy of the Sale Agreement, but he forwarded it to Rodriguez without reading it.

Up until mid-July 2013, Shahbaz, Massis, and Rodriguez communicated about paperwork that Massis's landlord needed regarding assignment of the lease and about Rodriguez paying rent and a security deposit. The landlord told Rodriguez he had some minor questions and things that " 'shouldn't be hard to put together.' " Specifically, the landlord asked for a written statement from the lessees stating their intention to assign the lease and giving the landlord permission to "go over the lease."[3] Massis testified that on June 15, 2013, he sent the landlord an email stating the tenants gave the landlord permission to speak with Rodriguez and engage in the process of transferring the lease.

Meanwhile, on July 6, 2013, Rodriguez delivered two cashier's checks totaling $60,000 to Shahbaz to be delivered to Massis at the close of escrow. Until July 18, 2013, all parties expected the deal to close. On July 18, however, Shahbaz finally read the Sale Agreement that Massis and Rodriguez signed and realized it differed from the Asset Purchase Agreement that he drafted. Shahbaz was angry because the Sale Agreement did not provide for his $10,000 commission and he thought Massis was trying to cheat him. Although Shahbaz never saw a signed copy of the Asset Purchase Agreement, Shahbaz felt he had a duty to let Rodriguez know the Sale Agreement did not accurately reflect the terms of the agreement.[4] So,

---

[3]    According to the statement of decision, there were four lessees: Massis, Massis's wife, and another married couple.

[4]    The statement of decision indicates that Shahbaz considered himself to be a dual agent for Massis and Rodriguez, although he never made written or oral disclosures to Rodriguez or Massis about that, and Rodriguez believed Shahbaz was solely Massis's agent. The settled statement on appeal does not indicate that Shahbaz testified he considered himself a dual agent, but it

3

without first communicating with Massis, Shahbaz told Rodriguez that he would be returning her two cashier's checks and that "the deal was off as far as he was concerned."

Both Shahbaz and Rodriguez testified that when Shahbaz returned the checks, he told Rodriguez that Massis was " 'shady,' " that Massis cut him out of his fee, and that he (Shahbaz) was unwilling to continue in the deal. According to Rodriguez, Shahbaz told her that the Sale Agreement had different terms than the "true contract." According to Shahbaz, he told Rodriguez that it was up to her if she wanted to complete the deal. Shahbaz testified he did not know if Rodriguez would proceed with the deal. He did not learn she pulled out of it until July 29, 2013, when he and Massis communicated via text message.[5]

Massis testified he did not learn about the events of July 18 until July 29 and up to that latter date, he believed the deal would close. He also testified that he intended to pay Shahbaz $10,000 if the deal closed, and that the omission of Shahbaz's compensation in the Sale Agreement was a mere oversight. Indeed, Massis and Shahbaz both testified that they worked together once before and that Massis had paid Shahbaz his full fee based on an oral agreement.

For her part, Rodriguez, who believed Shahbaz was acting on Massis's behalf, repeatedly testified that she considered his returning the checks to her as an act that unambiguously cancelled the contract. Rodriguez did not

does state that Shahbaz did not disclose a dual agency on his part and that both Rodriguez and Massis testified they believed Shahbaz was solely Massis's agent.

[5] Shahbaz testified that he tried to contact Massis from July 18 to July 29, 2013, but he provided no text messages or phone records to corroborate this.

4

communicate this to Massis until July 29, 2013, when she sent him a text message stating: " 'I'm sure [Shahbaz] told [you] he gave back my check and the deal is off for us.' " (Bolding omitted.) Rodriguez also testified she told Massis: "Shahbaz 'didn't feel comfortable with how things were playing out and therefore neither do [I].' " (Capitalization omitted.)

Massis subsequently tried to sell the business and twice had potential buyers, but no sale occurred despite the landlord's willingness to allow the assignment of the lease. Massis testified that as a result of Rodriguez's withdrawal from the Sale Agreement, he lost $110,000, plus $62,400 for 15 more months of rent, and $3,000 in attorney fees to his landlord for a stipulation terminating the tenancy.

Massis sued Rodriguez and Shahbaz for breach of contract. Massis also alleged causes of action against Shahbaz for breach of fiduciary duty, constructive fraud, interference with a contract, and negligence. The parties tried the case before the court over several days in March 2018. After Massis rested his case, the trial court indicated it was prepared to grant Rodriguez's motion for judgment pursuant to section 631.8 of the Code of Civil Procedure. The next day, Massis dismissed the action against Rodriguez with prejudice.

Upon conclusion of the trial, the trial court indicated it proposed to grant judgment in favor of Massis. Massis prepared a proposed statement of decision, to which Shahbaz filed objections contending his actions were not a "substantial factor" in causing Massis's alleged damages. The trial court ultimately agreed with Shahbaz and issued a statement of decision rejecting all of Massis's claims.

In doing so, the trial court relied principally on the rule that "[c]onduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." Starting from the premise that the sale of

the business could not have been completed without the transfer of the lease, the court found no evidence that Massis and the other tenants gave the landlord written permission to assign the lease as the landlord had requested. Therefore, the court determined, Massis's failure to arrange for the transfer of the lease prior to the transaction closing date prevented the sale from closing. Moreover, the court explained, there was no "direct evidence that Shahbaz made any statements to Rodriguez that prevented her from closing the transaction." Relatedly, the court rejected Massis's argument that Shahbaz wrongly returned the checks to Rodriguez. In the court's view, Shahbaz was obligated to return them pursuant to section 2344 "[o]nce Rodriguez asked Shahbaz to return the checks to her." The court entered judgment in favor of Shahbaz. Massis appealed.

## DISCUSSION

Massis argues the trial court erred in applying section 2344 to find Shahbaz rightly returned the checks to Rodriguez. He also challenges the court's conclusion that Shahbaz's conduct was not a substantial factor in causing the alleged harm. He contends that in applying the rule that "[c]onduct is not a substantial factor in causing harm if the same harm would have occurred," the court wrongly failed to consider and apply an exception to the rule. We address these claims below.

### A. Causation

To establish liability under each of his causes of action, Massis had to show Shahbaz's conduct was a substantial factor in causing the alleged harm. (CACI Nos. 303, 400, 2200, 4101, 4111; *Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 391.) An actor's conduct is a substantial factor in bringing about harm if the injury, or its full extent, would not have occurred but for that conduct. (*In re Ethan C.* (2012) 54 Cal.4th 610, 640

6

(*Ethan C.*).) "Conversely, if the injury would have occurred even if the actor had not acted wrongfully, his or her conduct generally cannot be deemed a substantial factor in the harm." (*Ibid.*)

There is an "exception" to the "but for" test which operates in cases involving "concurrent independent causes," i.e., "multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1240 (*Viner*).) That is, the " 'but for' limitation does not apply . . . if the actor's wrongful conduct alone would have produced the harm, even without contribution by other forces." (*Ethan C.*, *supra*, 54 Cal.4th at p. 640; *Viner*, at p. 1240 ["if 'two forces are actively operating . . . and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about' "].)

Causation is ordinarily a question of fact, but the issue of causation may be decided as a question of law "if, under undisputed facts, there is no room for a reasonable difference of opinion." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1687; *Fagerquist v. Western Sun Aviation, Inc.* (1987) 191 Cal.App.3d 709, 719.) Here, the material facts regarding the parties' conduct are undisputed. Accordingly, we review de novo the issue of whether Shahbaz's conduct alone would not have produced Massis's harm.[6]

Until July 18, 2013, Rodriguez had expected the deal to close. Then, on July 18, when Shahbaz returned the checks to Rodriguez, he told her that

---

[6] Although the record is unclear on the point, we presume the court made an implied factual finding that Shahbaz's conduct alone would not have produced Massis's harm. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59–60.) Although our analysis applies the de novo standard (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912), we would reach the same ultimate conclusion under the substantial evidence standard.

Massis was " 'shady' " and that he was unwilling to stay in the deal. Rodriguez believed Shahbaz was acting on Massis's behalf when he returned the checks, and "she considered the return of the checks by Shahbaz on July 18, 2013 an act that unambiguously cancelled the contract." (Capitalization omitted.) "Once Shahbaz gave [Rodriguez] the checks back, she considered the deal off." (Capitalization omitted.) When Rodriguez finally communicated with Massis on July 29, 2013, she told him: " 'I'm sure [Shahbaz] told [you] he gave back my check and the deal is off for us.' Shahbaz 'didn't feel comfortable with how things were playing out and therefore neither do [I].' " (Capitalization and bolding omitted.)

This evidence points unerringly to one conclusion: the deal was off on July 18, 2013 as far as Rodriguez was concerned because of Shahbaz's conduct alone. We thus conclude the evidence did not support the trial court's finding on causation.

We take a moment to address the trial court's observation that, "[w]hen asked on cross examination whether she would have closed the transaction after July 18 if the landlord had given written consent to the assignment of the lease, Rodriguez responded, 'If everything happened that was supposed to happen, I would have closed the deal.' " While the trial court apparently viewed Rodriguez's statement as evidence that Shahbaz's conduct was insufficient by itself to cause Massis's harm, we cannot agree. When considered with all of Rodriguez's other testimony, her statement cannot reasonably be understood as suggesting that she would have gone forward with the deal despite Shahbaz's conduct in returning her checks and criticizing both Massis and the deal itself.

Given our analysis and conclusion, we need not address Massis's claim that any failure of the four tenants to give written permission for the

8

landlord to assign the lease would not have prevented the sale from closing. We also need not address Massis's contention that the trial court erred in determining that Shahbaz was not liable because he did not make statements "preventing" Rodriguez from closing the transaction.[7] That said, because the issue may be relevant to the proceedings on remand, we address whether the trial court erred in applying section 2344 to find Shahbaz rightly returned the checks to Rodriguez.

## B. Section 2344

To reiterate, the trial court reasoned Shahbaz was obligated under section 2344 to return Rodriguez's two cashier's checks to her once she "asked" him to.[8] Massis contends Shahbaz had no right to return the checks because title in the checks had vested in Massis under the terms of the Sale Agreement. That is, the agreement obligated Rodriguez to pay Massis

---

[7] We understand the trial court's finding that there "is no direct evidence that Shahbaz made any statements to Rodriguez that prevented her from closing the transaction" as a basis to further justify the conclusion that Shahbaz's conduct was not a substantial factor in causing the alleged harm. That said, it is unclear why the court made this finding, as the causes of action raised by Massis did not require proof that Shahbaz prevented Rodriguez from fulfilling her end of the Sale Agreement.

[8] We note that although the court's statement of decision asserts "[o]nce Rodriguez *asked* Shahbaz to return her checks to her, Shahbaz was obligated to return her property" (italics added), nowhere in the statement of decision, such as in its summary of the evidence, does the court include facts indicating that Shahbaz gave Rodriguez the checks back because she asked him for them. Similarly, the settled statement on appeal, approved by the trial court, does not include any facts or circumstances that suggest Rodriguez asked for the checks back. To the contrary, the testimony of both Shahbaz and Rodriguez as recounted in the settled statement only indicates that Shahbaz—angry because he thought Massis was trying to cheat him out of his commission—contacted Rodriguez, then went to her and returned the checks on his own accord and without prompting.

$60,000 immediately upon signing, and to satisfy that obligation Rodriguez gave two checks totaling $60,000 to Shahbaz, who was Massis's agent, with instructions to give the checks to Massis.

Section 2344 provides: "If an agent receives anything for the benefit of his principal, *to the possession of which another person is entitled*, he must, on demand, surrender it to such person, or so much of it as he has under his control at the time of demand, on being indemnified for any advance which he has made to his principal, in good faith, on account of the same; and is responsible therefor, if, after notice from the owner, he delivers it to his principal." (Italics added.) Thus, the statute plainly required a showing that Rodriguez was entitled to possession of the two checks when she allegedly demanded their return. Although the court made no explicit finding on this point, we infer the court made an implied finding (*Fladeboe v. American Isuzu Motors Inc.*, *supra*, 150 Cal.App.4th at pp. 59–60), and turn to examine the propriety of that finding. We conclude it is unsupported by substantial evidence.

Under the terms of the Sale Agreement, Rodriguez agreed to immediately pay Massis $60,000 upon signing, which occurred in May 2013. The Sale Agreement did not attach conditions to Massis taking title to the money; nor did it give Rodriguez any right to retain the money after its transfer to Shahbaz, whom Rodriguez understood to be Massis's agent. (See, e.g., *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 233 ["in the absence of escrow instructions to the contrary—title to a deposit vests in the seller when the seller 'accept[s] the contract' "]; *Holloway v. Thiele* (1953) 116 Cal.App.2d 68, 69–73 [deposit belonged to the sellers based on the operative contract, and their agent was liable after returning that deposit based on undisclosed conditions not set out in the contract].)

10

Although Shahbaz testified that Rodriguez instructed him to deliver the checks to Massis "at the close of escrow," such circumstance does not change the terms of the Sale Agreement. Notably, Shahbaz fails to address Massis's argument on this point. Ultimately, there is no substantial evidence that Rodriguez was entitled to the checks back.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court to redetermine the issues based on the evidence previously before it in conformity with the views herein expressed. The court may receive additional evidence as it deems necessary or advisable. Massis shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

11

_____
Fujisaki, Acting P. J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.


A155887